IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA ex rel.,  )
ARTARIUS JETT,                      )
                                    )
            Petitioner,             )
                                    )
    v.                              )   No. 06 C 2363
                                    )
                                    )
GUY PIERCE, Warden,                 )
                                    )
            Respondent.             )

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner Artarius Jett's ("Jett") petition for a writ of habeas corpus. For the reasons stated below, we deny the petition.

## BACKGROUND

On September 25, 2001, Jett was found guilty of first-degree murder by a jury in the Circuit Court of DuPage County and was sentenced to natural life in prison. Jett appealed the verdict and on July 3, 2003, an Illinois Appellate Court affirmed the verdict. Jett then petitioned for leave to appeal to the Supreme Court of Illinois and the petition was denied on October 7, 2003. Jett subsequently filed a petition for post-conviction relief in Illinois state court, which was summarily dismissed on April

1

24, 2004. Jett appealed that ruling and an Illinois appellate court affirmed the ruling on October 17, 2005. Jett then sought relief with the state trial court from the original judgment pursuant to 735 ILCS 501-1401 and that relief was denied on March 6, 2006. Jet is currently appealing that decision. On April 27, 2006, Jett filed the instant petition for writ of habeas corpus ("Petition").

## LEGAL STANDARD

A district court may entertain a habeas corpus petition from a "person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). A habeas corpus petition shall also not be granted:

> on behalf of a person in custody pursuant to the judgment of a State court . . . unless the adjudication of the claim . . . (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1-2). A decision by a state court is deemed to be "'contrary to' [the United States Supreme Court's] clearly established precedents if it 'applies a rule that contradicts the governing law set forth in [the Court's] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the Court's] precedent.'" *Early v. Packer*, 537 U.S. 3, 8 (2002)(quoting *Williams v. Taylor*, 529 U.S. 362, 405-

06 (2000)).

## DISCUSSION

Jett argues in the Petition that the prosecution against him and his conviction violated the principle of the separation of powers, his due process rights, and the Ex Post Facto Clause of the United States Constitution. Jett also contends that his trial counsel was ineffective.

I. Separation of Powers, Ex Post Facto, and Due Process

Jett contends that the prosecution against him and his conviction violates the principle of the separation of powers, his due process rights, and the Ex Post Facto Clause because, according to Jett, a non-statutory element was added to his indictment, jury instructions, and verdict forms. Jett was accused and convicted of stabbing his girlfriend, who is the mother of his child, dousing her with gasoline, and setting her on fire while she was still alive. (G. Ex. D 1). Jett was charged by an indictment ("Original Indictment") on October 27, 1999, and on June 26, 2000, during the criminal proceedings, the United States Supreme Court issued a ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Court held in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. At the time Jett committed the murder, the Illinois first-degree murder statute did not include the factor of

"exceptionally brutal or heinous behavior indicative of wanton cruelty" as an element of the offense. 720 ILCS 5/9-1(a)(1999). After *Apprendi*, the factor was included as a basis for a sentencing enhancement. 730 ILCS 5/5-8-1(a)(1)(b), (a)(1)(c)(2000). On September 29, 2000, in an attempt to comply with *Apprendi*, the State obtained an additional indictment ("Additional Indictment") against Jett alleging that the conduct for each count in the original indictment was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." ("Brutal or Heinous Factor")(G. Ex. D 2)(Pet. 9). In addition, at trial the jury was given an instruction ("Jury Instruction") stating that if it found the elements of first-degree murder were proven beyond a reasonable doubt, the jury should "continue [its] deliberations to determine whether or not the State ha[d] proven beyond a reasonable doubt that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (G. Ex. D 2)(G. Ex. G.). The jury was also given three verdict forms ("Verdict Forms") that gave the jury the option of finding Jett: 1) "not guilty of First Degree Murder," 2) "guilty of First Degree Murder and [finding] that the murder was not accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty," or 3) "guilty of First Degree Murder and [finding] that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (G. Ex. D 3)(G. Ex. G).

A. Separation of Powers and Due Process

Jett asserts that the Additional Indictment, Jury Instruction, and Verdict

Forms, which included the Brutal or Heinous Factor, altered the statutory elements of the first-degree murder offense and created a new offense. Jett contends that since only the Legislature is permitted to create statutory criminal offenses, the alteration of the elements of the first-degree murder offense was an improper alteration "by the executive and judicial branch in violation of constitutional principles of separation of powers, due process and ex post facto application of the laws." (Reply 1-2). However, the Additional Indictment did not create a new element for the first-degree murder offense. Jett presents no legal support that shows that the State was barred from bringing subsequent indictments against him. There is nothing in the Additional Indictment that is contrary to *Apprendi*, because in *Apprendi* the issue concerned sentencing issues that needed to be presented before the trier of fact rather than issues concerning the content of an indictment. 530 U.S. at 475. Also, in the instant action, the factual determination concerning the Brutal or Heinous Factor was made by the jury, not on the basis of the Additional Indictment. The Additional Indictment merely put Jett on notice that at the trial the State would attempt to prove the Brutal or Heinous Factor beyond a reasonable doubt. The Original Indictment and the Additional Indictment listed the elements for first-degree murder separately from the Brutal or Heinous Factor and did not give the impression that the factor was an element of the offense.

In regard to the Jury Instruction and Verdict Forms, there was no indication in them that would have led the jury to conclude that the Brutal or Heinous Factor was an element for first-degree murder. The Jury Instruction clearly explained that the

5

jury should address the Brutal or Heinous Factor only if they first found that the elements of first-degree murder had been proven beyond a reasonable doubt. (G. Ex. D 2-3)(G. Ex. G.). Jett has pointed to no opinion of the United States Supreme Court or any other controlling precedent that would indicate that his constitutional rights were violated by the Jury Instruction or Verdict Forms. The Verdict Forms gave the jury three options on which to list their final determination and did not in any way instruct the jury that the Brutal or Heinous Factor was an element of first-degree murder. The Verdict Form choices allowed the jury to find Jett "not guilty of First Degree Murder" without even addressing the Brutal or Heinous Factor contained in the guilty verdict forms. (G. Ex. D 3)(G. Ex. G.).

Jett also argues that the inclusion of the Brutal or Heinous Factor constituted a substantive change in the law and that he was thus convicted of an "offense that did not exist at the time of the offense." (Reply 5). Jett was sentenced based upon the record that included information concerning the brutal, heinous, and cruel nature of his crime, which was and remains a valid consideration for sentencing. Throughout the entire course of the criminal proceedings, Jett was charged with the offense of first-degree murder and the State never indicated that it would not seek an enhancement to the sentence based on the nature of the crime. Neither the first-degree murder statute nor the enhanced sentencing statute have been invalidated. 720 ILCS 5/9-1(a); 730 ILCS 5/5-8-1(a)(1)(b), (a)(1)(c). Thus, Jett was convicted of the same offense that existed when he committed his crime. Based on the above, Jett has not shown any violation of the principle of the separation of powers or any

violation of his due process rights.  Finally, we note that Jett's trial counsel did not object to the inclusion of the Brutal or Heinous Factor in the Additional Indictment, Jury Instruction, or Verdict Forms.  (Reply 8).

### B. Ex Post Facto Clause

Jett also argues that the inclusion of the Brutal or Heinous Factor in the Additional Indictment, Jury Instruction, and Verdict Forms changed the offense for which he was charged after he committed his crime and thus violated the Ex Post Facto Clause of the United States Constitution.  The Ex Post Facto Clause bars the government from retroactively altering the definition of a crime or increasing the punishment for a criminal act after the commission of the crime.  *Weaver v. Graham*, 450 U.S. 24, 28 (1981).  The purpose of the Ex Post Facto Clause is to ensure that a defendant is provided with "notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct."  *United States v. Jamison*, 416 F. 3d 538, 539 (7th Cir. 2005).

The instant action is similar to *Jamison*, 416 F.3d 538 in which the defendant pled guilty to distributing cocaine base.  *Id.* at 539.  In *Jamison*, the Seventh Circuit pointed out that although the law had been altered by *United States v. Booker*, 543 U.S. 220 (2005), the Ex Post Facto Clause did not bar the court's consideration of *Booker* for the purpose of sentencing.  416 F.3d at 539.  The Court in *Jamison* indicated that the protections of the Ex Post Facto Clause merely require that a

7

defendant receive proper notice of what constitutes a crime and the potential punishment for such a crime. *Id.* The Court noted that the defendant "knew that he was committing a crime at the time he distributed cocaine base." *Id.* The Court also noted that "[t]he new judicial interpretation of the law brought about by *Booker* affect[ed] [the defendant's] punishment, not whether his conduct was innocent" and that "[d]istributing cocaine base was not made a crime by the Court's decision in *Booker*." *Id.* The defendant in *Jamison* also had a "fair warning that distributing cocaine base was punishable by a prison term of up to twenty years" since it is "spelled out in the United States Code." *Id.*

Similarly, at the time Jett committed the murder he knew he was committing a crime. First-degree murder was a crime when Jett committed the murder, and murder remains a crime today. As with *Booker* and the cocaine offense in *Jamison*, the holding in *Apprendi* did not make murder a crime in Illinois and the holding only affected the possible punishment that Jett could receive, not the determination of his innocence. Jett also had proper notice in the Illinois statutes that informed him that first-degree murder was a crime and notified him of the potential punishment for such a crime. Thus, Jett has not shown that there was any violation of the Ex Post Facto Clause by the inclusion of the Brutal or Heinous Factor in the Additional Indictment, Jury instruction, or Verdict Forms.

II. Ineffective Assistance of Counsel

Jett contends that he received ineffective assistance of counsel by his trial

counsel "when [his counsel] acquesed [sic] to the substantive change of the offense changed [sic] which resulted in the imposition of an excessive sentence natural [sic] life without parole." (Pet 5, 8). Jett contends that his counsel was also ineffective because he failed "to object to the Unconstitutional Conviction and Sentence." (Pet. 9). In order to prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). *See also Shell v. United States*, 448 F.3d 951, 954 (7th Cir. 2006)(stating that "[t]he familiar standard of *Strickland* requires a showing that [the petitioner's] counsel was objectively deficient"). A reviewing court considering an ineffective assistance of counsel claim should be "highly deferential" to the counsel's judgment and should avoid the temptation to "second-guess" the counsel. *Id* at 689. The reviewing court should try to "evaluate the conduct from counsel's perspective at the time" in question and thus avoid the "distorting effects of hindsight . . . ." *Id.* A court reviewing an allegation of ineffective assistance of counsel "must indulge a strong presumption that counsel's conduct falls within the range of reasonable professional assistance." *Shell*, 448 F.3d at 955 (quoting *Strickland*, 466 U.S. at 689). Due to such a presumption, "a party bears a heavy burden in making a winning claim based on ineffective assistance of counsel." *Shell*, 448 F.3d at 955 (quoting *United States v. Trevino,* 60 F.3d 333, 338 (7th Cir. 1995)).

In addition to showing that the representation was defective, a defendant must show that the "deficient performance so prejudiced his defense that [the defendant]

9

was deprived of a fair trial." *Shell*, 448 F.3d at 954; *see also Strickland,* 466 U.S. at 691-92(stating that a defendant must also show that he was prejudiced because the "error had [an] effect on the judgment"). Each and every adverse consequence resulting from counsel's decisions is not deemed to be prejudicial "for constitutional purposes." *United States v. Springs*, 988 F.2d 746, 749 (7th Cir. 1993).

### A. Counsel's Performance

In regards to the performance of Jett's trial counsel, Jett has not pointed to any evidence that would indicate that Jett's counsel failed to act in a reasonable and professional manner. As explained above, the inclusion of the Brutal or Heinous Factor was appropriate under the law and thus, Jett's counsel properly refrained from making a frivolous objection concerning the factor. Also, Jett's counsel did not simply act as a bystander during the inclusion of the Brutal or Heinous Factor, but took steps as Jett's advocate to protect Jett's interests. Jett himself acknowledges, for instance, that his counsel moved to dismiss the Additional Indictment based upon the Speedy Trial Act. (Reply 8)(G. Ex. A 6). Jett did not prevail on the motion, but his counsel cannot be faulted simply because the best arguments available did not enable Jett to prevail. There is no indication that Jett's counsel acted contrary to Jett's wishes and Jett acknowledges in his appellate brief that Jett "remained uncommunicative with defense counsel throughout the trial, with few exceptions." (G. Ex. A 7). Thus, the evidence presented does not indicate that Jett's counsel acted incompetently.

B. Prejudice

Jett argues that he was prejudiced by his counsel's alleged deficient performance. We disagree. Even if his counsel had not provided adequate representation, Jett has failed to show any prejudice to himself. The evidence in this case overwhelmingly established Jett's guilt and that an enhancement based upon the brutal, heinous, and cruel nature of the crime was appropriate. For example, the evidence showed that Jett had stabbed the victim, doused her with gasoline, and lit her on fire while she was still alive. (G. Ex. D 1). Jett admitted in his appellate brief that when the victim was found by a third party, the victim was mostly naked and her torso, arms, and legs were charred. (G. Ex. A 9). Jett admitted that the victim was moaning and crying out when paramedics arrived, and that despite the pain the victim suffered, she remained conscious enough to identify Jett as the one who had perpetrated the horrific acts upon her. (G. Ex. D 7)(G Ex. A 9-10). Jett admitted in his appellate brief that the victim "told [a police officer] she was going to die and pleaded with [the police officer] to help her." (G. Ex. A 10). The trial court properly described the inhumane and reprehensible acts perpetrated by Jett that caused such harm and suffering as "horrific." (G. Ex. D 7).

Jett also acknowledges that there are many facts that showed he was guilty. For example, in Jett's appellate brief, Jett admits that when he was brought to the police station he was asked about the victim and he indicated he knew that "something bad" happened to the victim and that he had "asked [her] to marry him several times, but she had refused." (G. Ex. A. 14). Jett also admitted that the

victim told a police officer that "she had been stabbed and set on fire by her boyfriend, Taurus Jett" and that she spelled out Jett's last name and gave his date of birth. (G. Ex. A 10). Jett admitted that near the victim's burning car, the police found a paper bag with a "Gourmet" brand kitchen knife inside and the knife had blood on the blade. (G. Ex. A 12). Jett admitted that the police later found a bag under a floor mat in his car which contained a receipt and an empty package for a "Gourmet" brand kitchen knife. (G. Ex. A 12-13). Thus, there was ample evidence of Jett's guilt. The state appellate court correctly concluded that the "evidence overwhelmingly showed that [Jett] murdered [the victim] and did so in an exceptionally brutal or heinous manner." (G. Ex. D 7). Therefore, even if Jett's counsel had objected to the Brutal or Heinous Factor, Jett would clearly still have been found guilty of first-degree murder and would still have been sentenced to natural life in prison. Thus, Jett has not shown that he was prejudiced by his counsel's alleged deficient representation.

## CONCLUSION

Based on the foregoing analysis, we deny Jett's motion for a writ of habeas corpus.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: October 26, 2006