# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ex rel., ARTARIUS JETT, | ) ) ) |
| Petitioner, | ) ) |
| v. | ) No. 06 C 2363 ) ) |
| GUY PIERCE, Warden, | ) ) |
| Respondent. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Petitioner Artarius Jett's ("Jett") motion for a certificate of appealability. For the reasons stated below, we deny the motion for a certificate of appealability.

## BACKGROUND

On September 25, 2001, Jett was found guilty of first-degree murder by a jury in the Circuit Court of DuPage County and was sentenced to natural life in prison. Jett appealed the verdict and on July 3, 2003, an Illinois Appellate Court affirmed the verdict. Jett then petitioned for leave to appeal to the Supreme Court of Illinois and the petition was denied on October 7, 2003. Jett subsequently filed a petition for

1

post-conviction relief in Illinois state court, which was summarily dismissed on April 24, 2004. Jett appealed that ruling and an Illinois Appellate Court affirmed the ruling on October 17, 2005. Jett then sought relief with the state trial court from the original judgment pursuant to 735 ILCS 501-1401 and that relief was denied on March 6, 2006. On April 27, 2006, Jett filed a petition for writ of *habeas corpus* ("Petition") and on October 26, 2006, we denied the Petition. Jett has now filed a motion for a certificate of appealability.

## LEGAL STANDARD

If a court denies a petition for writ of *habeas corpus* and the petitioner wishes to appeal that ruling the petitioner must obtain a certificate of appealability. 28 U.S.C. § 2253(c). A court should only issue a certificate of appealability "if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The petitioner must also show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDonnell*, 529 U.S. 473, 484 (2000)(quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 (1983)).

## DISCUSSION

Jett includes in his motion for a certificate of appealability the same arguments included in the Petition. Jett argues that the prosecution against him and his

2

conviction violated the principle of the separation of powers, his due process rights, and the Ex Post Facto Clause of the United States Constitution. Jett also contends that his trial counsel was ineffective. Jett has not presented any arguments in his motion for a certificate of appealability that explain why he believes this court erred in denying the Petition, or why reasonable jurists could disagree regarding this court's ruling on the Petition.

I. Separation of Powers, Ex Post Facto, and Due Process

Jett contends that the prosecution against him and his conviction violates the principle of the separation of powers, his due process rights, and the Ex Post Facto Clause because, according to Jett, a non-statutory element was added to his indictment, jury instructions, and verdict forms. Jett was accused and convicted of stabbing his girlfriend, who was the mother of his child, dousing her with gasoline, and setting her on fire while she was still alive. (G. Ex. D 1). Jett was charged by an indictment ("Original Indictment") on October 27, 1999, and on June 26, 2000, during the criminal proceedings, the United States Supreme Court issued a ruling in *Apprendi v. New Jersey*, 530 U.S. 466 (2000). The Court held in *Apprendi* that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490. At the time Jett committed the murder, the Illinois first-degree murder statute did not include the factor of "exceptionally brutal or heinous behavior indicative of wanton cruelty" as an element

of the offense. 720 ILCS 5/9-1(a)(1999). After *Apprendi*, the factor was included as a basis for a sentencing enhancement. 730 ILCS 5/5-8-1(a)(1)(b), (a)(1)(c)(2000). On September 29, 2000, in an attempt to comply with *Apprendi*, the State obtained an additional indictment ("Additional Indictment") against Jett alleging that the conduct for each count in the Original Indictment was "accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty" ("Brutal or Heinous Factor"). (G. Ex. D 2); (Pet. 9). In addition, at trial the jury was given an instruction ("Jury Instruction") stating that if it found the elements of first-degree murder were proven beyond a reasonable doubt, the jury should "continue [its] deliberations to determine whether or not the State ha[d] proven beyond a reasonable doubt that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (G. Ex. D 2); (G. Ex. G.). The jury was also given three verdict forms ("Verdict Forms") that gave the jury the option of finding Jett: 1) "not guilty of First Degree Murder," 2) "guilty of First Degree Murder and [finding] that the murder was not accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty," or 3) "guilty of First Degree Murder and [finding] that the murder was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (G. Ex. D 3); (G. Ex. G).

### A. Separation of Powers and Due Process

Jett asserts that the Additional Indictment, Jury Instruction, and Verdict Forms, which included the Brutal or Heinous Factor, altered the statutory elements of

the first-degree murder offense and created a new offense. As we explained in our prior ruling, the Additional Indictment merely put Jett on notice that at the trial the State would attempt to prove the Brutal or Heinous Factor beyond a reasonable doubt. The Original Indictment and the Additional Indictment listed the elements for first-degree murder separately from the Brutal or Heinous Factor and did not give the impression that the factor was an element of the offense. In regard to the Jury Instruction and Verdict Forms, there was no indication in either of them that would have led the jury to conclude that the Brutal or Heinous Factor was an element for first-degree murder. The Jury Instruction clearly explained that the jury should address the Brutal or Heinous Factor only if the jury first found that the elements of first-degree murder had been proven beyond a reasonable doubt. (G. Ex. D 2-3); (G. Ex. G.). The Verdict Forms gave the jury three options on which to list their final determination and did not in any way instruct the jury that the Brutal or Heinous Factor was an element of first-degree murder. Jett was sentenced based upon the record that included information concerning the brutal, heinous, and cruel nature of his crime, which was and remains a valid consideration for sentencing. Throughout the entire course of the criminal proceedings, Jett was charged with the offense of first-degree murder and the State never indicated that it would not seek an enhancement to the sentence based on the nature of the crime. Neither the first-degree murder statute nor the enhanced sentencing statute has been invalidated. 720 ILCS 5/9-1(a); 730 ILCS 5/5-8-1(a)(1)(b), (a)(1)(c). Jett was convicted of the same offense that existed when he committed his crime. Thus, we conclude that no

reasonable jurist could debate whether Jett has shown any violation of the principle of the separation of powers or any violation of his due process rights.

### B. Ex Post Facto Clause

Jett also argues that the inclusion of the Brutal or Heinous Factor in the Additional Indictment, Jury Instruction, and Verdict Forms changed the offense for which he was charged after he committed his crime and thus violated the Ex Post Facto Clause of the United States Constitution. The purpose of the Ex Post Facto Clause is to ensure that a defendant is provided with "notice, foreseeability, and, in particular, the right to fair warning as those concepts bear on the constitutionality of attaching criminal penalties to what previously had been innocent conduct." *United States v. Jamison*, 416 F. 3d 538, 539 (7th Cir. 2005)(quoting *Rogers v. Tennessee*, 532 U.S. 451 (2001)).

As we explained in our prior ruling, the instant action is similar to *Jamison*, in which the defendant pled guilty to distributing cocaine base. *Id.* at 539. In *Jamison*, the Seventh Circuit pointed out that although the law had been altered by *United States v. Booker*, 543 U.S. 220 (2005), the Ex Post Facto Clause did not bar the district court's consideration of *Booker* for the purpose of sentencing. 416 F.3d at 539. The Court in *Jamison* indicated that the protections of the Ex Post Facto Clause merely require that a defendant receive proper notice of what constitutes a crime and the potential punishment for such a crime. *Id.* The Court noted that the defendant "knew that he was committing a crime at the time he distributed cocaine base." *Id.*

6

The Court also noted that "[t]he new judicial interpretation of the law brought about by *Booker* affect[ed] [the defendant's] punishment, not whether his conduct was innocent" and that "[d]istributing cocaine base was not made a crime by the Court's decision in *Booker*." *Id.* The Court in *Jamison* also stated that the defendant had a "fair warning that distributing cocaine base was punishable by a prison term of up to twenty years" since it was "spelled out in the United States Code." *Id.*

Similarly, at the time Jett committed the murder, he knew he was committing a crime. First-degree murder was a crime when Jett committed the murder, and murder remains a crime today. As with *Booker* and the cocaine offense in *Jamison*, the holding in *Apprendi* did not make murder a crime in Illinois and the holding only affected the possible punishment that Jett could receive, not the determination of his innocence. Jett also had proper notice in the Illinois statutes that informed him that first-degree murder was a crime and the statutes notified him of the potential punishment for such a crime. Thus, Jett has not made a substantial showing that there was any violation of the Ex Post Facto Clause by the inclusion of the Brutal or Heinous Factor in the Additional Indictment, Jury Instruction, or Verdict Forms.

II. Ineffective Assistance of Counsel

Jett contends that he received ineffective assistance of trial counsel "when [his counsel] acquisced [sic] to the substantive change of the offense changed [sic] which resulted in the imposition of an excessive sentence [sic] natural life without parole." (Pet 5, 8). Jett contends that his counsel was also ineffective because he failed "to

object to the Unconstitutional Conviction and Sentence." (Pet. 9). In order to prevail on an ineffective assistance of counsel claim, a petitioner must demonstrate that his counsel's performance "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). In addition to showing that the representation was defective, a defendant must show that the "deficient performance so prejudiced his defense that [the defendant] was deprived of a fair trial." *Shell v. United States*, 448 F.3d 951, 954 (7th Cir. 2006); *Strickland,* 466 U.S. at 691-92.

In regards to the performance of Jett's trial counsel, Jett has not pointed to any evidence that would indicate that Jett's counsel failed to act in a reasonable and professional manner. As explained above, the inclusion of the Brutal or Heinous Factor was appropriate under the law and thus, Jett's counsel did not make a frivolous objection concerning the factor. Also, Jett's counsel did not simply act as a bystander during the inclusion of the Brutal or Heinous Factor, but took steps as Jett's advocate to protect Jett's interests. Jett himself acknowledges, for instance, that his counsel moved to dismiss the Additional Indictment based upon the Speedy Trial Act. (Reply 8); (G. Ex. A 6). Thus, the evidence presented does not indicate that Jett's counsel acted incompetently.

In addition, even if Jett's counsel had not provided adequate representation, as we explained in our prior ruling, Jett has failed to show any prejudice to himself. The evidence in this case overwhelmingly established Jett's guilt and that an enhancement based upon the brutal, heinous, and cruel nature of the crime was

appropriate. For example, the evidence showed that Jett had stabbed the victim, doused her with gasoline, and lit her on fire while she was still alive. (G. Ex. D 1). Jett also acknowledges that there are many facts that showed he was guilty. For example, Jett admitted that the victim told a police officer that "she had been stabbed and set on fire by her boyfriend, Taurus Jett" and that she spelled out Jett's last name and gave his date of birth. (G. Ex. A 10). Thus, Jett has not shown that he was prejudiced by his counsel's alleged deficient representation. Based on the above, Jett has failed to make a substantial showing of the denial of a constitutional right and no reasonable jurist could debate whether the Petition should not have been denied. We also conclude that the Petition lacks any merit and Jett has not presented any arguments in the Petition or his motion for a certificate of appealablity that would indicate that the Petition deserves encouragement to proceed further on appeal. Therefore, we deny the motion for a certificate of appealability.

## CONCLUSION

Based on the foregoing analysis, we deny the motion for certificate of appealability.

 

                                                _____
                                                Samuel Der-Yeghiayan
                                                United States District Court Judge

Dated: December 6, 2006